IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAROLENG INVESTMENTS LIMITED, | : | |
| *Petitioner*, | : | |
| v. | : | Civil Action No. 1:20-cv-1793-RGA |
| BLUESTONE RESOURCES, INC., | : | |
| *Respondent*. | : | |

MEMORANDUM ORDER

Pending is Respondent's Motion to Stay Petition to Enforce Arbitration Award. (D.I. 14). The motion is fully briefed. (D.I. 15, 29, 36).

Petitioner Caroleng obtained an arbitration award of about $8,400,000 and various other amounts including nearly $2,000,000 in pre-award interest. Respondent Bluestone has answered, raising various affirmative defenses to enforcement.

The parties agree that the motion to stay proceedings is guided by the six-factor test set out in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317-18 (2d Cir.1998). (D.I. 15 at 3-4; D.I. 29 at 8-9).

The six factors set out in *Europcar* (the "*Europcar* factors") are:

(1) [T]he general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
(4) the characteristics of the foreign proceedings, including:
(i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement);

> (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity;
> (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and
> (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
> (5) a balance of possible hardships to each of the parties []; and
> (6) any other circumstances that could tend to shift the balance in favor or against adjournment.

*Europcar*, 156 F.3d at 317-18 (citations omitted).

An analysis of the six *Europcar* factors shows that the factors weigh in favor of granting the motion to stay. In particular, the general objectives of litigation and important international comity interests weigh in favor of granting the motion to stay. However, in order to limit the risk of future hardships to Caroleng, Bluestone will be required to post a suitable security bond. Each of the six *Europcar* factors is addressed below.

**Factor 1 - The General Objectives of Arbitration.**

The first factor, which evaluates the general objectives of arbitration, weighs in favor of staying the proceedings due to the danger of inconsistent results that could lead to expensive and protracted future litigation. The court in *Europcar* determined that "the general objectives of arbitration" include "the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Id.* at 317. The court stated, "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Id.*

Bluestone argues that this factor weighs in its favor because staying the proceedings would avoid the possibility of inconsistent results and conflicting outcomes that could trigger protracted and expensive litigation. Bluestone highlights that if this Court allows Caroleng to

enforce its award but the Paris Court of Appeal reverses the arbitration award, Bluestone would then have to return to this Court to have the Court reconsider the award. This would lead to protracted and expensive litigation that goes against the general objectives of arbitration. In response, Caroleng states that denying the motion to stay promotes the general objectives of arbitration by avoiding lengthy post-award proceedings that deny the prevailing party the award granted by the arbitral tribunal. Caroleng argues that Bluestone is unlikely to prevail in the Paris Court of Appeal and this weighs in favor of denying the stay. Although Caroleng is correct in noting that staying the proceedings would lead to it having to wait longer to enforce its arbitration award, I think this concern is outweighed by the risk of inconsistent results and the litigation that likely would ensue from any inconsistent results.

I find that this factor weighs in favor of granting a stay.

**Factor 2 - The Status of the Foreign Proceedings and the Estimated Time for those Proceedings to Be Resolved.**

The second *Europcar* factor, which takes into account the status of the foreign proceedings and the estimated time for the proceedings to be resolved, weighs in favor of staying the proceedings. The French proceedings are already underway, and Caroleng's burden of having to wait a little longer to enforce its award is outweighed by the potential benefits of saving future time and money by not having to relitigate the same issues if there is an inconsistent result between the decisions here and in France. Bluestone states that a decision is expected before the end of 2021 or in early 2022. Bluestone's stance is somewhat supported by the declaration of its French counsel, Benjamin Siino. (D.I. 37 (Siino Decl. ¶ 33)). Caroleng argues that Bluestone's motion to set aside the arbitration award is likely to be rejected by the Paris Court of Appeal. Caroleng argues further that a decision will likely take at least eighteen months and that it can be appealed to France's highest court, which may take another two years to render a decision.

I think that the second factor weighs in favor of granting the motion to stay. Caroleng's stance that Bluestone's motion to set aside the arbitration award is likely to fail is not based on any evidence, because Caroleng is unaware of the basis of Bluestone's claim to set aside the arbitration award.[1] Caroleng's statement is based on mere speculation. Further, the likely period of delay from a stay are in line with the periods of delay that other district courts have found reasonable. *See Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 113 (D.D.C. 2015) (finding the second *Europcar* factor weighed in favor of granting a stay because there was a likelihood that the underlying proceedings would be decided within a year of the court granting the stay); *Jorf Lasfar Energy Co. v. AMCI Export Corp.*, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005) (stay likely to last a year). Staying the proceedings would result in Caroleng having to wait longer to enforce its arbitration award. But the additional time is not dispositive of the issue; in the end, staying the proceedings is not likely to waste time and resources and will avoid the possibility of the waste of time and resources if the French proceedings go against Caroleng. The second factor weighs in favor of staying the proceedings.

**Third Factor - Whether the Award Sought to Be Enforced Will Receive Greater Scrutiny in the Foreign Proceedings under a Less Deferential Standard of Review.**

The third *Europcar* factor, which looks at whether the award will receive greater scrutiny under a less deferential standard of review in the foreign proceedings, weighs against granting a stay. Neither side argues that the French courts will give any greater scrutiny under a less deferential standard of review than a U.S. court would. (D.I. 15 at 7; D.I. 29 at 10-11). While

---

[1] In any event, I see a lot of lawyers in proceedings who opine to me on their chances of winning in related proceedings. The lawyers on average have about 50% accuracy.

4

the parties argue about the significance of this joint view, I think the point is that when, for whatever reason, a foreign court is going to give greater scrutiny under a less deferential standard of review, that means there is an increased likelihood the award will not hold up. Thus, this factor weighs against granting the motion to stay.

**Fourth Factor - The Characteristics of the Foreign Proceedings.**

The fourth *Europcar* factor is further divided into four subfactors.

The first subfactor asks whether the foreign proceedings were brought to enforce the award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement). *Europcar*, 156 F.3d at 318. In France, Bluestone moved to set aside the arbitration award. This subfactor weighs in favor of denying the motion to stay.

The second subfactor asks whether the foreign proceedings were initiated before the underlying enforcement proceeding so as to raise concerns of international comity. *Europcar*, 156 F.3d at 318. Here, Bluestone showed that it initiated the proceedings in France before Caroleng initiated the enforcement action in this district court. Thus, following the general principle that a court handling a second-filed action should show deference to a court handlings a first-filed action, I think this subfactor weighs in favor of granting the stay.

The third subfactor asks whether the foreign proceedings were initiated by the party seeking to enforce the award in federal court. Here, the foreign proceedings were initiated by Bluestone. The suit here was filed by Caroleng. I do not see this subfactor as having any significance separate from the other subfactors.

The fourth subfactor asks whether the foreign proceedings were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute. Caroleng argues that this subfactor weighs in its favor of the stay because Bluestone's failure to comply with

deadlines during the arbitration and Bluestone's delay in informing Caroleng of its action to set aside the judgment show that Bluestone's intent is to hinder and delay the resolution of this dispute. Although Bluestone did miss deadlines during the arbitration proceedings, there is no evidence that links those delays to the current motion to stay. Further, under French law, Bluestone was not required to inform Caroleng of the initiation of proceedings to set aside the award because it is the duty of the clerk's office of the Paris Court of Appeal to inform the respondent of the initiation of proceedings. (D.I. 37 (Siino Decl. ¶ 16)).  Thus, there is little evidence that Bluestone initiated proceedings with an intent to hinder or delay resolution of the dispute because Bluestone was legally allowed to initiate proceedings in France and has done so in a timely and orderly fashion. Thus, this subfactor weighs in favor of granting the motion to stay proceedings.

Overall, the fourth *Europcar* factor is neutral or pretty close to it.  It does not carry much weight either way.  *See Getma*, 142 F. Supp. 3d at 116.

**Fifth and Sixth Factors- A Balance of the Possible Hardships to the Parties and Any Other Circumstance that Could Tend to Shift the Balance in Favor of or Against Adjournment.**

The fifth and sixth *Europcar* factors look to the balance of hardships to the parties and any other circumstances that weigh in favor of or against granting the motion to stay. Caroleng argues that these factors weigh in favor of denying the stay because there is no evidence that Bluestone would be willing to post adequate security and because Caroleng believes that Bluestone will deplete or conceal its assets and Caroleng will not be able to recover damages once the proceedings are finally over. Bluestone responds by denying that it will deplete or conceal its assets and by highlighting that paying a $10,000,000 award during a global pandemic will impose severe hardships and Bluestone might not be able to secure a refund if the Paris Court of Appeal annuls the final award.

In its Reply Memorandum, Bluestone agrees to the posting of a suitable security bond (D.I. 36 at 7), which weighs in favor of granting the motion to stay. Further, although Caroleng undoubtedly wants access to the final award, it has failed to show that it is suffering financial hardship and will continue to suffer financial hardship as it awaits resolution of the dispute. *See Jorf Lasfar Energy Co.*, 2005 WL 3533128, at *4 (finding that fifth factor weighed in favor of stay because defendant was willing to post a suitable bond and although plaintiff wanted access to its award, plaintiff failed to show that it was suffering financial hardships by not having immediate access to the award). Because of this, Bluestone's Motion to Stay should be granted so long as Bluestone posts suitable security that limits the risk of Caroleng being unable to recover if it ultimately prevails. Bluestone suggests that this amount is $1,000,000, but I think Bluestone is one zero short of what is suitable given the size of the award.

Bluestone is given two weeks to post a $10,000,000 security bond with the Clerk of the Court. Bluestone's motion to stay (D.I. 14) is **GRANTED** when the bond is posted.

IT IS SO ORDERED this 6th day of May 2021.

/s/ Richard G. Andrews
United States District Judge